# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DTE ENERGY COMPANY and DTE
ELECTRIC COMPANY,

        *Plaintiffs*,

v.

LEXINGTON INSURANCE
COMPANY,

        *Defendant*.

Case No. _____

## COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiffs DTE Energy Company ("DTE Energy") and DTE Electric Company ("DTE Electric"), (collectively, "Plaintiffs"), by and through their attorneys, hereby set forth their Complaint against Defendant Lexington Insurance Company and state as follows:

## PARTIES

1.     DTE Energy is a domestic corporation incorporated in the State of Michigan, with its principal place of business located in Detroit, Michigan.

2.     DTE Electric is a domestic corporation incorporated in the State of Michigan, with its principal place of business located in Detroit, Michigan.

33251916v3

3.     Lexington is a Delaware corporation—specifically, an insurance company—with a principal place of business in Boston, Massachusetts.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the Plaintiffs and Lexington, and because the amount in controversy exceeds $75,000.

5.     This Court has personal jurisdiction over Lexington because it purposefully availed itself of the privilege of conducting business in Michigan. Lexington's activities in Michigan have included, without limitation, the selling of insurance policies.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the actions giving rise to these claims occurred in this judicial district.  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(3) because Lexington is subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### DTE Energy and DTE Electric

7.     DTE Energy is a leading, diversified energy company engaged in the development and management of energy-related businesses and services in the United States and Canada, including in the State of Michigan.

33251916v3

8.     DTE Electric—a wholly-owned subsidiary of DTE Energy—is a state-regulated electric utility company serving approximately 2.3 million residential and business customers throughout Southeast Michigan and the Thumb region.

**The Policies**

9.     At all times relevant hereto, Lexington insured Plaintiffs under a Commercial General Liability - Commercial Wrap-up (Project Specific) Policy, Policy No. 031710943, with effective dates of June 30, 2014, through March 31, 2022, with limits of $2 million per occurrence and $4 million aggregate (the "Primary Policy").

10.     The Primary Policy includes a $100,000 self-insured retention per occurrence.

11.     At all times relevant hereto, Lexington also insured Plaintiffs under a Follow Form Excess Liability Policy, Policy No. 015681459, with effective dates of June 30, 2014, through March 31, 2022, with per occurrence and aggregate limits of $18 million (the "Excess Policy").  The Excess Policy follows form to and applies in excess of the Primary Policy.  Collectively, the Primary Policy and the Excess Policy shall be referred to as "the Policies."

12.     The Primary Policy's "Named Insured" is DTE Electric.

13.     In the section entitled, "Who Is An Insured," the Primary Policy lists several categories of additional Insureds, multiple of which apply to DTE Energy.

3

33251916v3

Therefore, DTE Energy qualifies as an insured for purposes of Lexington's duty to defend (and, in the event such allegations are proven, for purposes of Lexington's duty to indemnify).

14. Because both DTE Energy and DTE Electric are Insureds, the Primary Policy at all relevant times has imposed upon Lexington the duty to defend Plaintiffs against any 'suit' seeking damages for, *inter alia,* 'property damage' to which the Primary Policy applied.

15. The Policies also impose upon Lexington the duty to indemnify Plaintiffs, requiring that, "[Lexington] will pay those sums that the insured becomes legally obligated to pay as damages because of, *inter alia,* 'property damage' to which this insurance applies."

16. As described *infra*, Plaintiffs have been named as defendants in a pending lawsuit in Michigan state court alleging, among other things, property damage of the type covered under the Policies.

17. Plaintiffs timely tendered a claim related to this underlying lawsuit under the Policies to Lexington.

18. There is no exclusion in either Policy that bars coverage for the claim submitted by Plaintiffs.

19. As the "Named Insured," DTE Electric timely paid all premiums in connection with the Policies.

4

33251916v3

20.     Plaintiffs have complied with all terms and conditions under the Policies.

## The Underlying Litigation

21.     On July 28, 2021, a putative class action lawsuit was filed in the Circuit Court for the County of Wayne, Case No. 21-009198-NZ, originally styled *Michelle Busuito and Matthew Howe, Jerome and Jennifer Dubrulle, et al. v. DTE Energy Company and John Does 1-5*.  DTE Electric was not named as a defendant in this original complaint.

22.     As described *infra*, the putative class action plaintiffs allege that they suffered catastrophic damages (including damage from stormwater) as a result of defendant-power companies' negligence when their properties in Grosse Pointe, Grosse Pointe Park, Grosse Pointe Farms, Grosse Pointe Woods, Grosse Pointe Shores, Detroit, and Harper Woods experienced a historical flood event on June 25-26, 2021.

23.     On August 25, 2021, a Second Amended Class Action Complaint was filed in the underlying lawsuit.  The class action plaintiffs erroneously styled this complaint their "First Amended Class Action Complaint."  As confirmed by a review of the underlying docket, their true first amended complaint was filed on August 2, 2021.  However, later that month (on August 25, 2021) they filed their second amended complaint, described here.  For clarity, Plaintiffs shall refer to this

document as the Second Amended Class Action Complaint.   Like the original complaint, this Second Amended Complaint named DTE Energy—but not DTE Electric—as a defendant.   It also named John Does 1-5 as defendants.

24.   The allegations in the underlying lawsuit arise from an Energy Distribution Services Agreement (the "EDSA") between Detroit and DTE Electric—*not DTE Energy*.   Because DTE Electric was the contracting party under the EDSA, DTE Electric—not DTE Energy—was the only DTE entity with potential exposure in the underlying litigation.   On information and belief, the naming of DTE Energy as the defendant was thus a misnomer from the very beginning of the underlying lawsuit.

25.   Among other things, the Second Amended Class Action Complaint alleged that the defendants improperly and negligently maintained and/or repaired the power infrastructure at the Detroit Public Lighting Department ("PLD") Ludden Substation, which provides electricity to the Great Lakes Water Authority's Freud Pumping Station.

26.   The Second Amended Class Action Complaint further alleged that defendants failed to warn appropriate governmental entities, the plaintiffs, and/or the public regarding the PLD power outage or its likely impact on critical sewer and stormwater infrastructure.

33251916v3

27.     The Second Amended Class Action Complaint further contended that the allegedly resulting PLD power failures significantly contributed to the damages that impacted thousands of individuals and entities in Southeast Michigan during the historic flood event that occurred on June 25-26, 2021.

28.     The Second Amended Class Action Complaint asserted negligence claims under Michigan law, and it sought compensatory damages, exemplary damages, and attorneys' fees and costs.  More specifically, the Second Amended Class Action Complaint sought damages for: (a) structural damage to real property; (b) destruction of personal property; (c) costs to sanitize and clean residences; (d) diminution in market value of properties; (e) loss of use and enjoyment of properties; and (f) emotional damages, including embarrassment, outrage, mental anguish, fear and mortification, denial of social pleasures, and stress.

29.     The Second Amended Class Action Complaint alleged that the underlying plaintiffs were entitled to damages for, *inter alia,* 'property damage' falling within the coverage of the Policies.

30.     The class action plaintiffs sought leave to add DTE Electric as a defendant on or about June 28, 2022, but the Circuit Court denied this request on or about August 26, 2022.

31.     On August 31, 2022, a Third Amended Class Action Complaint was filed in the underlying lawsuit.

7

32. The Third Amended Class Action Complaint contained similar allegations to those contained in the First Amended Class Action Complaint, but it also contained some relevant differences.

33. First, the Third Amended Class Action Complaint replaced the unidentified John Doe Defendants with three specifically-named contractor defendants: Miller Pipeline - Michigan, LLC; Utility Resource Group, LLC; and TMC Alliance LLC.

34. Second, the Third Amended Class Action Complaint alleged with greater specificity the alleged cause of the power outage. The Third Amended Class Action Complaint alleged that on June 22, 2021, Miller Pipeline—acting as a contractor for DTE Energy and/or one of its wholly owned subsidiaries—negligently severed a cable during an excavation project, causing the power outage that exacerbated the damage that occurred during the flooding event.

35. Third, the Third Amended Class Action Complaint added allegations that Utility Resource Group failed to properly mark underground infrastructure pursuant to Miss Dig Ticket #B11590963.

36. Fourth, the Third Amended Class Action Complaint consolidated the two negligence counts from the First Amended Class Action Complaint (Negligence—Defect and Negligence—Failure to Warn) into a single negligence count.

8

33251916v3

37.     The Third Amended Class Action Complaint plainly sought damages for, *inter alia,* 'property damage' falling within the coverage of the Policies.

38.     On July 10, 2023, the Circuit Court granted DTE Energy's motion for summary disposition and dismissed the case against DTE Energy.

39.     In its summary disposition briefing papers, DTE Energy had made defensive arguments on behalf of *DTE Electric*—even though this entity was not named as a party to the case at this time—since DTE Energy believed it was reasonably likely that the class action plaintiffs intended to sue DTE Electric and had effectively done so but for a misnomer.  Indeed, because the class action plaintiffs' negligence claims concern conduct performed under the EDSA—an agreement to which only *DTE Electric* was a party—the defense of the misnamed DTE Energy was, in substance, a defense of DTE Electric's interests.  As set forth below, Lexington was aware of this fact when it agreed to participate in DTE Energy's defense.

40.     The Circuit Court found that the existence of a superseding intervening event—the 1,000-year flood event—had absolved DTE Electric (and DTE Energy) of any potential liability for its alleged errors or omissions.  As noted *supra*, the Circuit Court denied the underlying plaintiffs' motion to add DTE Electric to the case.

33251916v3

41.     The underlying plaintiffs appealed the Circuit Court's orders dismissing the case against DTE Energy and denying leave to amend to add DTE Electric as a defendant.

42.     On August 21, 2025, the Michigan Court of Appeals reversed both of the Circuit Court's orders, reviving the case against DTE Energy and allowing DTE Electric to be named as a defendant.

43.     On November 13, 2025, as a result of the Michigan Court of Appeals' decision, a Fourth Amended Class Action Complaint was filed in the underlying action, naming DTE Electric as a defendant.  The Fourth Amended Class Action Complaint remains the operative complaint in the underlying litigation.

## **Lexington's Wrongful Coverage Denial and Improper Claims Handling**

44.     As defendants in the underlying litigation, Plaintiffs are incurring defense costs that have not been paid or reimbursed by Lexington.  Further, although Plaintiffs are pursuing a vigorous defense to the claims alleged against them in the underlying litigation and do not in any way concede the merits of those claims, they face the risk of becoming legally obligated to pay damages because of, *inter alia,* alleged 'property damage' as defined by the Policies.

45.     Plaintiffs are compelled to bring the instant suit because Lexington has failed to defend Plaintiffs as required under the Primary Policy, because Lexington has refused to acknowledge its duty to indemnify Plaintiffs with respect to a potential

10

judgment or settlement in the underlying litigation, and because Plaintiffs' claim for coverage under the Policies has been repeatedly mishandled.

46.    On or about August 20, 2021, Plaintiffs timely tendered to Lexington a claim for defense and indemnification under the Policies after being named as a defendant in the underlying lawsuit.

47.    DTE Energy's tender included a copy of the underlying complaint, which made clear on its face that DTE Energy—not DTE Electric—was the named defendant.  This was further proof that Lexington knew from the outset that DTE Energy was the entity requiring a defense.

48.    On September 3, 2021, Lexington's claims administrator, AIG Claims, Inc., sent Plaintiffs a letter acknowledging receipt.  This letter referenced the underlying litigation against "DTE Energy" and identified the "Named Insured" as "DTE Electric."  This letter did not contain any suggestion that DTE Energy was *not* an Insured under the Policies.

49.    Plaintiffs' claim was ignored for unreasonably long stretches of time. Just by way of example, between August 20, 2021, and April 25, 2022, Plaintiffs had to repeatedly chase Lexington's claim administrator for an answer as to whether Lexington would participate in its insured's defense.  In one email, Plaintiffs noted, "DTE has waited patiently for over 7 months while unfairly having to incur significant defense costs that AIG ought to be paying.  We have spent needless hours

33251916v3

attempting to secure your answer, including at least 7 instances in writing, with no meaningful response to date."

50.     After taking *nearly eight months* to substantively respond to Plaintiffs' request for coverage, Lexington initially agreed to provide a defense to DTE Energy *under a full reservation of rights*.  After multiple requests for a response, Lexington finally sent an email on April 29, 2022 indicating that it would defend subject to a reservation of rights.  It then took *nearly another two months* for Lexington to formally communicate its initial coverage position to Plaintiffs. Lexington did so by letter dated June 24, 2022, stating: "Based upon our review of the [First Amended Class Action] Complaint and policy, Lexington agrees to participate in the defense of DTE in the above referenced lawsuit subject to a full reservation of rights and DTE's satisfaction of the policy's self insured retention…").

51.     Notably, *nowhere* in their June 24, 2022, letter did Lexington assert that DTE Energy was *not* an insured under the Policies.  This was not a mistake or inadvertent omission on Lexington's part.  Indeed, this was at least the second formal letter from Lexington acknowledging the litigation against DTE Energy and noting—without comment—that DTE Electric was the "Named Insured" under the impacted Policies.

52.     Although Lexington agreed to 'participate in the defense' in June 2022, Lexington never paid any defense costs.

33251916v3

53.     On February 2, 2023—in a stunning reversal for which no warning had been provided—Lexington sent a Coverage Denial Letter informing DTE Energy and DTE Electric that Lexington would *no longer* participate in Plaintiffs' defense in the underlying lawsuit.

54.     Notably, Lexington **had not** withdrawn its participation in Plaintiffs' defense in August 2022, when the Circuit Court denied the motion to add DTE Electric as a defendant.  As part of its continuing effort to keep its insurer advised, Plaintiffs had forwarded a copy of this judicial order to Lexington on or about September 26, 2022.  Instead, Lexington continued to request detailed invoices from Plaintiffs.

55.     On information and belief, Lexington's February 2, 2023, reversal followed the assignment of a new claims adjuster to the file.  In fact, apparently ***three different adjusters*** cycled through management of the claim between December 2021 and February 2023.

56.     The Coverage Denial Letter offered no explanation for why the same information Lexington had possessed since August 2021 now warranted a different coverage determination.

57.     In the Coverage Denial Letter, Lexington asserted ***for the first time*** that since DTE Energy was not explicitly mentioned as the "Named Insured" in the Policies, DTE Energy was not an insured under the Policies.

33251916v3

58.    Lexington's February 2, 2023, denial of coverage was untimely because by that date, Lexington had possessed the underlying complaint for approximately eighteen months, had issued an acknowledgment letter that raised no question about DTE Energy's insured status, and had issued a reservation of rights letter agreeing to participate in DTE Energy's defense.

59.    Also in the Coverage Denial Letter, Lexington declined to defend DTE Electric on the grounds that DTE Electric was—at least as of that time— "not named in the Lawsuit."

60.    Lexington's letter did not address the fact that it had been aware since at least August 20, 2021, that DTE Electric was not named in the Lawsuit, meaning this was years-old information, and that Lexington was aware of that fact when they initially accepted the defense.  Lexington did not address whether they had a duty to defend DTE Electric due to its status as an insured under the policy.

61.    Lexington's refusal to defend Plaintiffs was a breach of the Policies.

62.    As explained *supra*, DTE Energy qualifies as an "Insured" under multiple provisions under the Policies.

63.    Lexington knew or should have known that DTE Energy qualified as an insured under the Policies for purposes of the underlying lawsuit.  Indeed, Lexington's claims administrator addressed the Coverage Denial Letter to Plaintiffs'

14

in-house counsel, whose title and contact information reflect Lexington's awareness of the recipient's role representing both DTE Energy and DTE Electric:

> Director – Legal
> Office of the General Counsel
> ***DTE Energy/DTE Electric/DTE Gas***
> One Energy Plaza – 16 WCB
> Detroit, MI 48226

64.     Lexington's purported basis for denying coverage to DTE Electric—that DTE Electric allegedly was not named in the underlying lawsuit—did not recognize (a) that the non-naming of DTE Electric appeared to be a misnomer in the first instance that was subject to potential correction and therefore required DTE Electric to mount a defense, and (b) that the efforts to amend the operative underlying complaint to explicitly name DTE Electric as a defendant required DTE Electric to mount a defense to an actual suit.

65.     In the Coverage Denial Letter, Lexington also purported to reserve the right to deny coverage based on several policy exclusions, including: (a) the Failure to Supply Exclusion; (b) the Pollution Exclusion; (c) the Expected or Intended Injury Exclusion; and (d) the Fungus/Mold Exclusion.  However, the allegations of the underlying complaints were and are broad enough to allow for the potential that Plaintiffs could be held liable on grounds that would not  trigger any of these exclusions.  Thus, these exclusions did not and do not justify Lexington's failure to

defend DTE Energy or DTE Electric.  Lexington lacked any reasonable grounds for withholding the defense on the basis of any exclusion.

66.  Further, none of these exclusions justify Lexington's refusal to reimburse defense costs incurred prior to the issuance of its Coverage Denial Letter, which amounts were incurred at a time when Lexington had agreed to pay such costs.

67.  The Coverage Denial Letter also establishes Lexington's improper claim handling, including:

    a.  Denying coverage to DTE Energy without any legitimate basis for doing so;

    b.  Refusing coverage for DTE Electric despite knowing that DTE Electric was still compelled to defend against attempts to add it to the underlying suit and/or to correct the alleged misnomer.

68.  The Coverage Denial Letter also signaled that Lexington failed to conduct a reasonable and sufficient investigation before denying coverage to Plaintiffs.

69.  Prior to issuing the Coverage Denial Letter, Lexington never requested information relating to any questions that they might have concerning DTE Energy's status as an Insured under the Policies.

33251916v3

70.     Prior to issuing the Coverage Denial Letter, Lexington had requested and received from Plaintiffs detailed legal invoices and billing records related to the defense of the underlying lawsuit.

71.     Lexington continued to request detailed invoices from Plaintiffs under the guise that those invoices would be paid, *even after* Lexington knew that the only named defendant in the underlying lawsuit, at that time, was DTE Energy.

72.     Lexington issued the Coverage Denial Letter only *after* reviewing those detailed invoices and billing records, indicating that Lexington's withdrawal of a defense reflects a desire not to pay defense costs as opposed to a reasoned comparison of the underlying allegations to the applicable policy language.

73.     On information and belief, Lexington is defending one or more of Plaintiffs' co-defendants in the underlying litigation—including TMC Alliance LLC—under the same Policies that DTE Electric purchased.  Because Lexington obtained detailed invoices reflecting Plaintiffs' defense strategy before denying coverage, Lexington now possess confidential information that could be used to Plaintiffs' detriment.

74.     On information and belief, Lexington's defense of one or more co-defendants in the underlying litigation is eroding the Policies' limits at the expense of the "Named Insured" that paid all premiums.

17

33251916v3

75.     On August 21, 2023, Lexington, through outside coverage counsel, sent correspondence to Plaintiffs reaffirming their denial of coverage.

76.     In that correspondence, Lexington offered to "continue to pay reasonable defense fees and costs" incurred for fourteen days from the date of the letter, an offer that was arbitrary, inadequate, and indicative of Lexington's lack of confidence in its coverage position and in bad faith.

77.     Lexington's offer to pay an extremely small portion of defense costs—while refusing to pay any of the substantial defense costs Plaintiffs had already incurred—was made without any reasonable basis.

78.     As explained *supra*, the Michigan Court of Appeals has now reversed both the dismissal of DTE Energy and the denial of leave to add DTE Electric as a defendant in the underlying lawsuit, triggering the filing of the Fourth Amended Class Action Complaint.

79.     Consequently, both DTE Energy and DTE Electric are named defendants in the underlying lawsuit and are entitled to both a defense and indemnification under the Policies.

80.     Following the Court of Appeals decision, Plaintiffs requested that Lexington reconsider its coverage denial in light of this development. On September 4, 2025, Lexington's newest (and, apparently, fifth) claims adjuster communicated to Plaintiffs that Lexington's coverage position remained unchanged and that

33251916v3

Lexington would not reconsider its denial until and unless a Fourth Amended Class Action Complaint was filed or new information became available.  This response highlighted Lexington's unreasonableness and improper claims handling.

81.     To date, Lexington has refused to provide a defense to DTE Energy based on their erroneous position that it is not an insured under the Policies.  Further, Lexington repeatedly sent contradictory signals about whether it will defend DTE Electric, its Named Insured, even in light of a Fourth Amended Class Action Complaint having been filed.

82.     As a direct and proximate result of Lexington's wrongful denial of coverage and bad faith conduct, Plaintiffs have, to date, suffered and continue to suffer significant damages, including but not limited to:

   a. Defense costs and attorneys' fees incurred in defending the underlying lawsuit that should have been paid by Lexington;

   b. Costs and attorneys' fees incurred in seeking to obtain the insurance benefits to which Plaintiffs are entitled, including bringing this action;

   c. Prejudgment interest and loss of use of money used to pay defense costs that should have been paid or reimbursed by Lexington; and

   d. Such other damages as may be proven at trial.

33251916v3

83. To date, Plaintiffs have incurred defense costs of up to $1 million or more, none of which has been paid by Lexington.

84. Michigan law, M.C.L. Section 500.2006, provides for a 12% penalty interest provision against insurers that fail to pay claims on a timely basis.

85. Specifically, M.C.L, Section 500.2006(4) provides that, when claims are not paid on a timely basis, the benefits to be paid shall bear penalty interest at a rate of 12% *per annum* from a date 60 days after satisfactory proof of loss.

86. As described *supra*, Lexington failed to pay Plaintiffs' insurance claims on a timely basis. Accordingly and as alleged *infra*, Plaintiffs are entitled to, *inter alia*, recover such penalty interest from Lexington.

## CLAIMS FOR RELIEF

### COUNT ONE
### (Breach of Contract – Lexington's Failure to Defend DTE Energy)

87. Plaintiffs re-allege and incorporate the preceding paragraphs of their Complaint as though fully set forth herein.

88. The Policies are insurance contracts under which DTE Electric paid Lexington premiums in exchange for Lexington's promise to defend the insureds under the Policies against any 'suit' seeking damages for, *inter alia,* 'property damage' to which the Policies applied.

89. The claims against DTE Energy in the underlying litigation are covered because DTE Energy is an insured under multiple provisions under the Policies.

20

90. Because these claims allege liability potentially covered by the Policies, Lexington owed DTE Energy a duty to defend.

91. After initially (but, as described *supra*, very belatedly) agreeing to provide a defense to DTE Energy, Lexington abruptly reversed course and, on February 2, 2023, ceased "participating" in DTE Energy's defense without good cause.

92. Lexington has not changed its position regarding Lexington's duty to defend DTE Energy, even in light of the newly-filed Fourth Amended Class Action Complaint.

93. Further, Lexington has failed to reimburse defense costs incurred by DTE Energy during the period when Lexington had agreed to participate in the defense of DTE Energy.

94. By refusing and failing to defend DTE Energy, Lexington has breached the Primary Policy.

95. Lexington's breach of contract has directly and proximately caused damage to DTE Energy, including the unpaid defense costs incurred by DTE Energy and the costs associated with prosecuting the instant case to enforce its rights under the Primary Policy.

33251916v3

## COUNT TWO
### (Declaratory Relief – Lexington's Duty to Defend DTE Energy)

96.   Plaintiffs re-allege and incorporate the preceding paragraphs of their Complaint as though fully set forth herein.

97.   An actual controversy exists between DTE Energy and Lexington as to the existence and scope of Lexington's duty to defend DTE Energy under the Policies against any 'suit' seeking damages for 'property damage' to which the Policies applied.

98.   DTE Energy is entitled to a judicial declaration of the existence of and scope of Lexington's duty to defend it for covered losses under the Policies.

99.   This declaratory relief will serve a useful purpose by clarifying and settling DTE Energy's and Lexington's rights and duties under the Policies.  It would also settle a pending controversy.

## COUNT THREE
### (Declaratory Relief -- Lexington's Duty to Indemnify DTE Energy)

100.   Plaintiffs re-allege and incorporate the preceding paragraphs of their Complaint as though fully set forth herein.

101.   An actual controversy exists between DTE Energy and Lexington as to the existence and scope of Lexington's duty to indemnify DTE Energy under the Policies.

33251916v3

102. Indeed, Lexington has made clear in the Coverage Denial Letter that it will not indemnify losses that DTE Energy may incur in the underlying lawsuit that are covered under the Policies.

103. Accordingly, DTE Energy is entitled to a judicial declaration of the existence of and scope of Lexington's duty to indemnify it for covered losses under the Policies.

104. This declaratory relief will serve a useful purpose by clarifying and settling DTE Energy's and Lexington's rights and duties under the Policies. It would also settle a pending controversy.

## COUNT FOUR
### (Breach of Contract – Failure to Defend DTE Electric)

105. Plaintiffs re-allege and incorporate the preceding paragraphs of their Complaint as though fully set forth herein.

106. The Policies are insurance contracts under which DTE Electric paid Lexington premiums in exchange for Lexington's promise to defend it under the Policies against any "suit" seeking damages for, *inter alia*, 'property damage' to which the Policies applied.

107. The claims against DTE Electric in the underlying litigation are covered by the Policies because of the nature of the negligence claim, described *supra*.

108. Because these claims allege liability potentially covered by the Policies, Lexington owed DTE Electric a duty to defend.

23

33251916v3

109. Despite DTE Electric's request for defense in light of the Michigan Court of Appeals' ruling that it may be sued in the underlying litigation, Lexington has, to date, refused to honor its defense obligations under the Policies without good cause.

110. Lexington has failed to reimburse defense costs incurred by DTE Electric.

111. By refusing and failing to defend DTE Electric, Lexington has breached the Primary Policy.

112. Lexington's breach of contract has directly and proximately caused damage to DTE Electric, including the unpaid defense costs incurred by DTE Electric and the costs associated with prosecuting the instant case to enforce its rights under the Policies.

## COUNT FIVE
### (Declaratory Relief – Lexington's Duty to Defend DTE Electric)

113. Plaintiffs re-allege and incorporate the preceding paragraphs of their Complaint as though fully set forth herein.

114. An actual controversy exists between DTE Electric and Lexington as to the existence and scope of Lexington's duty to defend DTE Electric under the Policies against any 'suit' seeking damages for, *inter alia,* 'property damage' to which the Policies applied.

24

33251916v3

115.    DTE Electric is entitled to a judicial declaration of the existence of and scope of Lexington's duty to defend it for covered losses under the Policies.

116.    This declaratory relief will serve a useful purpose by clarifying and settling DTE Electric's and Lexington's rights and duties under the Policies.  It would also settle a pending controversy.

## COUNT SIX
### (Declaratory Relief – Lexington's Duty to Indemnify DTE Electric)

117.    Plaintiffs re-allege and incorporate the preceding paragraphs of their Complaint as though fully set forth herein.

118.    An actual controversy exists between DTE Electric and Lexington as to the existence and scope of Lexington's duty to indemnify DTE Electric under the Policies.

119.    Because Lexington has refused to confirm that it will defend DTE Electric, DTE Electric reasonably anticipates that Lexington will not indemnify losses that DTE Electric may incur in the underlying lawsuit that are covered under the Policies.

120.    DTE Electric is entitled to a judicial declaration of the existence of and scope of Lexington's duty to indemnify it for covered losses under the Policies.

121.    This declaratory relief will serve a useful purpose by clarifying and settling DTE Electric's and Lexington's rights and duties under the Policies.  It would also settle a pending controversy.

25

33251916v3

## COUNT SEVEN
### (Penalty Interest)

122. Plaintiffs re-allege and incorporate the preceding paragraphs of their Complaint as though fully set forth herein.

123. Under MCL 500.2006(4), an insurer must pay 12% interest on any insurance benefits that are not timely paid. An insurance benefit is not timely paid if it is not paid within 60 days of receipt of satisfactory proof of loss.

124. For first party benefits, the 12% penalty interest applies regardless of whether the amount of the loss is "reasonably in dispute."

125. More than 60 days has passed since Lexington received satisfactory proof of loss and therefore Lexington owes Plaintiffs 12% penalty interest on the amount of the loss.

126. Such penalty interest is particularly justified here, where, in addition to the extended delay, Lexington has harmed Plaintiffs in, at least, the following ways:

    a. Failing to provide a formal coverage position letter for nearly ten months, despite Plaintiffs' repeated requests for a coverage decision, including a nearly two-month delay between Lexington's informal email agreeing to defend under a reservation of rights and issuance of the formal coverage position letter;

b. Denying coverage for DTE Energy without having any reasonable grounds for doing so;

c. Denying coverage for DTE Electric notwithstanding it having been named in the Fourth Amended Complaint, and based solely on a temporary procedural posture that was subject to appellate review and in willful disregard of the likely misnomer that resulted in DTE Electric being misdescribed in the prior underlying complaints;

d. Denying coverage based on its unwillingness to pay covered defense costs rather than a reasoned application of alleged facts to applicable policy language;

e. Failing to conduct a reasonable investigation before denying coverage;

f. Refusing to pay defense costs that Lexington knew or should have known were owed under the Policies;

g. Making an arbitrary and inadequate offer to pay fourteen days' worth of "additional" defense costs while refusing to pay accumulated defense costs;

h. Failing to reconsider the denial of coverage after the Michigan Court of Appeals reversed the trial court's orders;

33251916v3

i. Issuing an untimely coverage denial approximately eighteen months after the initial tender, based entirely on information Lexington had possessed since the outset, and without any explanation for the delay;

j. Initially agreeing to participate in the defense while simultaneously failing to pay any defense costs, and continuing to request detailed invoices from Plaintiffs while having no intention of honoring its defense obligations;

k. Soliciting Plaintiffs' confidential and privileged defense strategy information through detailed invoice requests, and, on information and belief, simultaneously defending co-defendant(s) in the underlying litigation under the same Policies, thereby creating a conflict of interest that may prejudice Plaintiffs; and

l. Potentially eroding the limits of the Policies by defending and/or indemnifying other insureds while refusing to pay any defense costs on behalf of DTE Electric, the Named Insured who purchased the Policies and paid all premiums.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter final judgment in their favor and award damages of every kind (including without limitation direct, indirect, compensatory and consequential damages), multiple damages, attorneys' fees and costs, pre-suit, prejudgment and post-judgment interest at the maximum rate permitted by law, penalty interest (as described *supra*), further exemplary damages, and such other and further relief as this Court deems just and proper.

33251916v3

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial of all claims in the above-captioned action that are triable to a jury.

Dated: January 30, 2026                    Respectfully submitted,

**PLAINTIFFS DTE ENERGY and**
**DTE ELECTRIC**

By their attorneys,

/s/*Thomas P. Branigan*_____
Thomas P. Branigan (P41774)
Matin Fallahi (P84524)
BOWMAN AND BROOKE LLP
101 West Big Beaver Rd., Suite 1100
Troy, MI  48084
P: 248-205-3300 /F: 248-205-3399
thomas.branigan@bowmanandbrooke.com
matin.fallahi@bowmanandbrooke.com

Mary Rose Alexander (IL bar number: 6205313)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL  60611
P: 312-876-7672
mary.rose.alexander@lw.com

30

33251916v3

# CERTIFICATE OF FILING

I, Thomas P. Branigan, hereby certify that on January 30, 2026, I caused a true and accurate copy of the foregoing document to be filed by CM/ECF.

/s/*Thomas P. Branigan*_____
Thomas P. Branigan (P41774)
Matin Fallahi (P84524)
BOWMAN AND BROOKE LLP
101 West Big Beaver Road, Suite 1100
Troy, MI  48084
P: 248-205-3300 / F: 248-205-3399
thomas.branigan@bowmanandbrooke.com
matin.fallahi@bowmanandbrooke.com

31

33251916v3